## BERGSTEIN et al. v. LOWMAN FOLDING BOX CORPORATION et al.

District Court, N. D. New York.

June 28, 1945.

Allen & Allen, of Cincinnati, Ohio (Marston Allen and Gibson Yungblut, both of Cincinnati, Ohio, of counsel), for plaintiffs.

Carlson, Pitzner, Hubbard & Wolfe, of Chicago, Ill., and Ball & Ball, of Utica, N. Y. (Richard Russell Wolfe, of Chicago, Ill., and Donald J. Ball, of Utica, N. Y., of counsel), for defendants.

BRYANT, District Judge.

Plaintiffs claim infringement of claims 15, 18, 24 and 34 of Anderson Patent No. 2,197,089, which defines, with varying degree of particularity, a machine for folding paper boxes. Defendant Staude Company is a manufacturer of machines for making paper boxes. It manufactured and sold to defendant, Lowman Folding Box Corporation, the accused machine and is defending this suit. The defenses are noninfringement, invalidity because of lack of invention, invalidity because of failure to disclaim, and lack of title sufficient to maintain suit.

1. The patent in suit relates to a machine for manufacturing paper board boxes of the type commonly known as "knocked down infold boxes", which are furnished to the trade in collapsed condition to save space and transportation costs. The patent discloses a machine for infolding and gluing pre-cut and pre-creased box blanks, of the kind shown in Figure 2 of the patent, into infolded and collapsed form, shown in Figure 7. The type of box designed to be produced is, in all material respects, shown in patents to Beers, Nos. 738,516, issued September 8, 1903, and 1,032,645, issued July 16, 1912.

2. Anderson was a late entrant in an old and highly developed art. Wholly automatic machines for making collapsed boxes of the outfold type have been known in the art since at least 1898 and have been made and used commercially. The box, which the Anderson machine was designed to fold, has been known in the art since at least 1912 and automatic machines for making the same have been in use since about 1921. In fact, boxes of this type were manufactured on automatic machines and sold commercially by plaintiffs several years prior to the development of the machines covered by the patent.

It may be well to state generally the difference between infolded and outfolded boxes. Infold boxes are made by folding all four walls inwardly over the main panel of a blank. An outfold box is made by folding a blank with two of its opposite walls still extending in the plane of the blank.

3. Patentee Anderson was the first to devise a straight line machine for the manufacture of the Beers type of box. Straight line machines have many points superior to angular machines. They are more compact. They occupy less floor space, simplify factory lay-out and avoid the complexities and time loss of transfer of blanks from one machine section to another. However, in the face of the prior art, the making of a straight line machine would not, of itself, prove invention nor do plaintiffs so contend. Their contention is that Anderson took known parts and arranged them in forms and combinations that solved the problems of making infold boxes in a straight line machine and that his new forms and changed combinations constituted invention. Coming, as he did, into an old and highly developed field and at a late date, he must show a contribution of high order to overcome the expectations of mechanical development.

4. All four claims in issue are machine claims. Machines, both right angle and straight line, for folding and gluing boxes, infold and outfold, have followed a common pattern from almost the inception of

the art. They all embody in some form a mechanism for supplying the blanks to the machine, a conveyor mechanism for carrying the blanks through the machine, folder mechanism for folding the blanks during their progress, mechanism for applying glue to the partially folded blanks as they pass through the machine, and a stacker at the end of the machine. The Anderson machine follows this pattern.

Instrumentalities of various types for the performing of all of the above named functions were well known. In laying out a machine in accordance with the common pattern, the box to be folded must be determinative, to a large degree at least, of the selection and location of elements known in the art. Having determined the folds to be made, it is within the expected skill of a mechanic in this art to select any desired type of feeding, conveying, folding and gluing instrumentalities, and to arrange the selected ones in proper form and sequence to perform their respective and individual functions in moving the blank, making the folds and applying the glue in a predetermined order of operation.

5. The place the machine, shown in the patent, has taken in industry has a bearing upon the question of validity and invention over the prior art and the breadth of construction to be given the claims in issue.

Anderson was a designer and experimenter with limited experience with box making machinery. He was given a box to be folded. His company had no machine that could do the work. He designed one, selecting instrumentalities from the prior art and arranging them in proper sequence and correlation to perform the functions required. His employer built two of the designed machines. None have ever been sold. Plaintiffs, who now claim title, have never built any. They do have five machines of their own design which substantially follow Bergstein patent No. 2,-149,111. The latest of these five machines was put into service about 1939. Their explanation of lack of impress is that they, and their assignor, are box manufacturers and not box machine manufacturers and, therefore, had no incentive to commercialize the patented machine. The record fails to show that Anderson's disclosure made any appreciable impression on the art unless it is shown, as plaintiffs contend, through the making and sale of the accusing machine.

The patent claims at issue will be considered in the order in which they are considered in plaintiffs' briefs.

■ 6. Claims 18 and 24 set forth distinct statements in claim phraseology of the meat of the claimed Anderson advance. It is a machine that will take the Beers type box with the side walls transverse to the direction of motion and, while carrying it along, fold the front wall rearwardly and the rear wall forwardly and the triangular end portions of said walls in opposite directions. In the face of the prior art, do the features embodied in the two claims constitute invention?

Straight line outfold machines were in operation prior to Anderson. In order to infold, the machine has to turn the leading side wall rearwardly and the trailing side wall forwardly on score lines transversely to the direction of motion. Feeding the blank into the machine with side wall transverse to the direction of motion and the folding of the forward wall backward do not constitute invention. Both of these functions, and instrumentalities to perform them, are shown in the prior art. In regard to folding the trailing wall forwardly, the following is taken from plaintiffs' brief: "For this bare function, there were folding fingers in the prior art which might be employed. The fingers could be arranged to travel along with the blank, as in Van Vleet et al. No. 567,014, or Von Thien No. 1,980,604, or they could be pivoted at fixed positions in the machine as again in the Van Vleet patent No. 1,528,753. Anderson adopted the latter, while the Staude Master Gluer (the accused machine) uses the former".

In the Anderson machine the triangular tabs are reversely folded. The same is done by the accused machine. There are instrumentalities in the prior art that make such folds. They were shown as early as about 1913 in the Crawford machine (infold machine unpatented). Later, Butterfield, in patents Nos. 1,461,966 and 1,461,-967, and Bergstein, in patent No. 1,528,753, provided machines in which rotating sweeps were used to turn rear triangular elements forwardly while the forward ones were still struck out of line and folded by stationary sweeps. These were straight line outfold machines. LaBombard folded his side walls first and then folded back

the triangular tab and Bergstein did the reverse, folding the tab first and then his side walls. Anderson provides mechanism which reversely folds the tabs simultaneously with the folding of the side walls. This is an improvement. However, in making this improvement he used nearly the identical action that was used in the W.M.P. machine (an unpatented machine manufactured by Staude and sold and in public use more than two years prior to Anderson's filing date). A study of the two machines shows that each, in substantially the same manner, raises a flap or wall on the leading edge of a blank and folds the same rearwardly along a transverse crease line in the blank, and coincidently, with such infolding of the flap or wall, effects a reverse folding of a triangular tab attached to the wall. The main difference is that the W.M.P. machine, as constructed, folds tabs only along the leading edge whereas claims 18 and 24 make reference to folding along both leading and trailing edges. In the face of the prior art, a duplication of the folding mechanism in such form and position that it will fold tabs rearwardly on the trailing walls falls short of invention.

A machine, such as designed by Anderson, must have a feeding means that will leave the trailing wall free during the period of infolding. He solved this problem in an ingenious way. The feeding starts with a timed conveyor chain. At a certain point the blank is taken over by friction feeding means, which engages it, so as to leave the trailing wall free, and carries it along until after the folding. Then it is taken over from the friction feed by a timed chain and lug feed which engages the folded trailing wall and advances the blank in timed relation to the other instrumentalities. The friction feed, which must engage some part of the blank not being folded, prevents transverse buckling.

The feeding means, although not before paralleled in the art, falls short of patentable novelty. Concededly, chain and lug feeders and the friction types of feed were common in the art prior to Anderson. A machine designer knows the attributes of each. Admittedly, a designer "determines which of these conveying means he shall use, depending upon what the requirements are at a particular portion of the machine". The employment of one of these well known feeding means to do one part of the work and a different means to do another is well within the expectations of mechanical skill.

Anderson's claims 18 and 24 are so disclosed and crowded upon by the prior art that they are lacking in invention.

7. Claim 15 is a combination or, according to defendants, an aggregation. It sets forth the sequences of operating means. The seven "means" named therein are all found in the prior art. It is not contended that any are independent inventions. The results obtained from the designed combination are old results, viz., infolded boxes of the Beers type. All of the elements perform the functions for which they were originally designed. The patentable novelty, if any, must be found in the assemblage of the various instrumentalities. The claim is not so limited. It is broad enough to monopolize straight line infold machines. In a crowded art this cannot be done. Many of the "means" set forth in the claim are found, doing the same work and in the same manner, in both straight line outfold machines and right angle machines. Because of breadth, the claim must fall. Moreover, in view of the prior art, special reference being made to LaBombard patent No. 1,488,756 and the Staude W.M.P. machine, the claim must be held anticipated or lacking in invention.

8. Claim 34 is perhaps the broadest and, in some ways, the most vulnerable. With one or more exceptions it can be read upon the Von Thien patent No. 1,-980,604. Those exceptions seem to be the elements which fold the walls transversely and the triangular tabs reversely and the changing of the moving means from a chain and lug to friction while the trailing walls are being folded and then changing back to the original moving means. The inventive features of these elements have already been discussed. Many of the features of claim 34 are disclosed in Staude patent No. 1,910,413 and the Staude W.M.P. machine. The claim is anticipated by the prior art mentioned.

9. In view of findings already made, it is unnecessary to consider claims of invalidity because of failure to disclaim claim 17. It is also unnecessary to consider questions of ownership of patents.

10. In view of foregoing, consideration of claims of infringement is academic. However, it can be said that a finding of validity of the Anderson claims

in issue would have had to be followed by a finding of noninfringement. In view of the prior art Anderson must (had validity been found) be limited to a very narrow construction and an extremely limited range of equivalents. His machine and the accused machine are alike in respect to features which are common to machines disclosed in the prior art. They are alike, or very similar, in other respects. Both have means for folding trailing walls forwardly and triangular tabs reversely. As stated before, means to perform these functions cannot, in the face of prior use and disclosures, be monopolized. The same can be said in regard to the changes made in the moving means. Outside of those, the claim of infringement must be based upon the folding instrumentalities used prior to the time the blank reaches the gluing section of the machine. The two machines (Anderson and the accused) employ folding instrumentalities of different construction. The Anderson machine folds all flaps on the rear edge of the blank during its first folding operation and all flaps on the front edge in the second folding operation, whereas, Staude folds a part of the flaps on each edge in each operation. In folding sequence Staude follows LaBambard rather than Anderson. The two machines also differ quite radically in the instrumentalities used in making the folds. One utilizes a series of fingers pivoted on transverse shafts and the other carriages, with pivoted folder fingers, fixed to endless chains. Both of these devices have long been known in the art. Anderson, by using one, cannot monopolize the other through claim of equivalency. The folding sequence and the folding instrumentalities, found in the two machines, lack that identity of means and operation which must be combined to constitute infringement.

The facts support the following conclusions:

1. Claims 15, 18, 24 and 34 of Anderson patent No. 2,197,089 are invalid for anticipation by, or lack of, invention over the prior art.

2. Said claims are not infringed by the accused machine.

3. Defendants are entitled to judgment of dismissal.

The facts are herein set forth sufficiently to obviate the necessity of formal findings.